# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
## SOUTHERN DIVISION

| | |
|---|---|
| TIMMEKA HARRIS-REESE, Individually and as Parent and Next Friend of Z.R., a minor<br>8763 Foster Circle<br>Fort Meade, MD 20755 | : <br> : <br> : <br> : <br> : |
| and | : <br> : |
| DOUGLAS M. REESE, JR., Individually and as Parent and Next Friend of Z.R., a minor<br>8763 Foster Circle<br>Fort Meade, MD 20755 | : <br> : <br> : <br> : <br> : |
| Plaintiffs, | : <br> : |
| v. | :     Case No. _____ |
| UNITED STATES OF AMERICA | : <br> : |
| Serve On:    Department of the Navy<br>              Office of the Judge Advocate<br>              General<br>              Tort Claims Unit Norfolk<br>              9620 Maryland Avenue<br>              Suite 205<br>              Norfolk, VA 23511 | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |
| and | : <br> : |
|               Richard V. Spencer<br>              Secretary of the Navy<br>              1000 Navy Pentagon<br>              Washington, DC 20350 | : <br> : <br> : <br> : |
| and | : <br> : |
|               Robert K. Hur<br>              United States Attorney<br>              6406 Ivy Lane<br>              Suite 800<br>              Greenbelt, MD 20770 | : <br> : <br> : <br> : <br> : |
| and | : |

|  |  |
|---|---|
| William Barr | : |
| Attorney General | : |
| U.S. Department of Justice | : |
| 950 Pennsylvania Avenue, NW | : |
| Washington, D.C.  20530 | : |
|  | : |
| Defendant. | : |
|  | : |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT

Come now the Plaintiffs, TimMeka Harris-Reese and Douglas Reese, Jr., Individually and as Parents and Next Friends of Z.R., a minor, by and through their attorneys, Gregory K. Wells, Robert R. Michael, Andrew J. Hall and Shadoan, Michael & Wells, LLP, and Joseph H. Ostad and the Law Offices of Joseph H. Ostad, PA, and for causes of action state:

## FACTS COMMON TO ALL COUNTS

1. The amount of this claim exceeds the jurisdictional limit, and venue is proper in the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1346(b).  The matter arose in Montgomery County, Maryland.  This action arises under the Federal Tort Claims Act (28 U.S.C. § 2671, *et seq.*).

2. The Plaintiffs are TimMeka Harris-Reese and Douglas Reese, Jr., Individually and in their capacity as Parents and Next Friends of Z.R., their minor son.  Z.R. is a 3 year-old child who currently resides with his parents in the State of Maryland.  The events underlying the case occurred at Walter Reed National Military Medical Center (hereinafter, "WRNMMC") in Bethesda, Maryland.  Z.R. was treated as a dependent under the TRICARE Prime military healthcare program through his father, Sergeant Douglas Reese, Jr., United States Army.

3. This is a medical malpractice case involving the negligent failures in the decision to proceed with and performance of an elective non-emergent BMTT (Bilateral Myringotomy

2

Tympanostomy and Tubes) procedure and adenoid surgery including but not limited to the administration of pre-operative and intraoperative anesthesia care as well as intraoperative and post-operative care of the patient.  Plaintiffs also assert a negligent breach of the duty of informed consent.  All of the above events occurred at WRNMMC on September 13, 2016.

    4.  A Form 95 claim which is incorporated herein by reference in this Complaint was presented to the Defense Health Agency, Walter Reed National Military Medical Center, 8901 Wisconsin Avenue, Bethesda, Maryland 20889 (and the Office of the Department of the Navy, Office of the Judge Advocate General, Tort Claims Unit Norfolk, 9620 Maryland Avenue, Suite 205, Norfolk, VA 23511).  The Form 95 claim was brought within the two year statute of limitations.  28 U.S.C. § 2401.  No action was taken on said claim and the statutory six (6) month administrative period has concluded.  Plaintiffs then filed a Statement of Claim, incorporated herein by reference, with the Health Claims Arbitration Office of Maryland, HCA No. 2019-184, and subsequently filed an Election to Waive Arbitration pursuant to Maryland Code Annotated, Courts & Judicial Proceedings, § 3-2A-06B.  The Order of Transfer was signed on June 24, 2019.

    5.  Z.R. was born on September 1, 2015 to TimMeka Harris-Reese and Douglas Reese, Jr., at Howard County General Hospital in Columbia, Maryland, at 36 weeks 1 day gestation via spontaneous vaginal delivery.  All clinical findings of his newborn examination were normal.  On or about September 23, 2015, TimMeka Harris-Reese was advised by telephone that newborn screening of Z.R. revealed that he had sickle cell disease. He has an older sibling with sickle cell disease as well.

6. In May 2016, Z.R. began experiencing ear infections (acute otitis media) which resulted in him being seen and treated at a civilian hospital, Baltimore Washington Medical Center, with follow-up care at WRNMMC.  Z.R. was referred by the pediatricians at WRNMMC to the Otolaryngology Clinic at WRNMMC for evaluation for placement of ear tubes.

7. Z.R. was seen in the Otolaryngology Clinic at WRNMMC by Scott Evans Brietzke, M.D. for evaluation for ear tubes on June 22, 2016.  Dr. Brietzke noted that Z.R., at 9 months old, had two lifetime episodes of acute otitis media, as recently as one month prior to his visit, manifested as purulent ear drainage, fever as high as 103 degrees (resolving with antibiotics), and affecting both ears.  Dr. Brietzke also noted that Z.R. had constant rhinorrhea, runny nose, and noisy breathing at night, although there were no witnessed apneic episodes. Dr. Brietzke noted that Z.R. had sickle cell disease.  Dr. Brietzke's examination of Z.R's ears was positive for fluid in both ears.  The medical record reflected that Z.R. was previously diagnosed with asthma as well.

8. After taking a history and conducting an examination of Z.R., Dr. Brietzke recommended a BMTT procedure, i.e., the surgical placement of ear tubes in both of Z.R.'s ears to address the recurrent ear infections, and an adenoidectomy (removal of his adenoids), to address the reported snoring and mouth breathing issues.  These are elective procedures.  The surgery was eventually scheduled for September 13, 2016.

9. Z.R.'s surgery proceeded on September 13, 2016.  Z.R. arrived in the operating room at 8:19 a.m.  At the time of the procedure, Z.R. was one year of age.  Z.R.'s American Society of Anesthesiologist (ASA) assessment was evaluated at III which is consistent with moderate systemic disease.  Dr. Brietzke was the primary surgeon and assisted by Thomas G. Townes, M.D., noted in the medical record as "3549."  The anesthesiologist for the procedure was Christine Gerbstadt, M.D.  Additionally, there was an anesthesia trainee, Peter B. Willett, M.D.

10. It is well known in medicine that sickle cell children have abnormal hemoglobin, abnormal oxygen-carrying capacity, and have higher incidents of oxygenation problems during surgical procedures under general anesthesia secondary to the sickle cell disease. Z.R. also had an active "reactive airway disease" (asthma). Furthermore, the medical record noted that Z.R. was "audibly wheezing" prior to the procedure. It is also well known in medicine that any person with reactive airway disease and wheezing is at serious risk of intra-operative airway and breathing complications and oxygenation difficulties. As such, the procedure should have been cancelled by anesthesia before it even began, or at a minimum, postponed to better manage these conditions. The physicians and anesthesia team never informed Plaintiffs of these particular risks associated with the procedure.

11. The anesthesia team also failed to ensure and provide adequate hydration prior to surgery. Further, the anesthesia team failed to conduct a physical examination on the morning of the procedure, notwithstanding the fact that Z.R. was an ASA III patient, a sickle cell child, was actively wheezing, and had asthma.

12. According to the anesthesia record, induction of anesthesia occurred at 8:21 a.m. Intubation occurred at 8:51 a.m. Ms. Harris-Reese was present for both. Intubation was described as "difficult." According to the medical records, surgery began at approximately 9:00 a.m.

13. Z.R. began to experience oxygen deprivation during the procedure. Between the time period of 8:49-9:04 a.m., his EtCO2 level (a measure of the carbon dioxide being exhaled) was abnormally high, at 70 mm Hg. This is consistent with bronchospasm (the constriction of the muscles in the bronchioles of the lungs, which causes difficulty in breathing), and retention of carbon dioxide. At approximately 9:09 a.m., Z.R.'s pulse increased to an abnormally high level over 150 beats per minute. Z.R.'s heart rate remained at this level throughout the procedure until

5

9:28 a.m. At approximately 9:28 a.m., Z.R. became hypotensive, as his blood pressure dropped to an abnormally low level of approximately 60/40. Z.R.'s blood pressure continued to fall at each five minute interval as evidenced by the anesthesia record. Meanwhile, Z.R.'s pulse stayed abnormally high. This is indicative of a compensatory mechanism, i.e., Z.R. was working very hard to breathe oxygen. Nevertheless, the anesthesia team never identified what was causing Z.R.'s increasingly abnormal vital signs. The anesthesia health care providers did not anesthetically stabilize Z.R. They did not initiate CPR in the face of this life-threateningly low blood pressure until much later. They did not call the "Code Blue" team until much later.

14. According to the anesthesia record, at 9:34 a.m. the anesthesiologist then administered a large dose of 450 mg. of IV magnesium sulfate. Magnesium sulfate was a contraindicated agent in this setting, because it caused Z.R. to become further hypotensive, and bradycardic. As a result, Z.R.'s already abnormal vital signs worsened. Again, no CPR was initiated. Again, the "Code Blue" team was not called.

15. By 9:43 a.m., Z.R.'s blood pressure was approximately 45/35. Z.R. was near complete cardiac arrest. His pulse was erratic, and dropped from the 150s to the 60s. His blood pressure was still abnormally low. Meanwhile, his EtCO2 level had dropped to an abnormal level of 16, indicating hyperventilation. At 9:47 a.m., anesthesia attempted to administer atropine. However, Z.R.'s only IV access was "infiltrated," which means clogged. As a result, epinephrine was injected directly into the endotracheal tube. Atropine was not administered into the endotracheal tube. Z.R. remained extremely hypotensive and his pulses became non-palpable. Notably, anesthesia was unable to obtain IV access throughout this ordeal and as a result IO access (intraosseous infusion into the marrow of the bone) was obtained through the right tibia. At 9:53 a.m., Z.R.'s blood pressure was approximately 25/20. At 9:58 a.m., his blood pressure was

approximately 40/30. Chest compressions and cardiopulmonary resuscitation (CPR) were administered. The "Code Blue" was finally called at 10:00 a.m. CPR was continued. Pediatric Advanced Life Support (PALS) was also initiated. The Code team administered epinephrine and atropine. The defibrillator was administered at 10:06 a.m. Return of circulation occurred at 10:10 a.m. Z.R. was transferred to the Pediatric Intensive Care Unit.

16. As a result of the near cardiac arrest and circulatory collapse during this ordeal, Z.R.'s brain was deprived of oxygen. This caused a severe and permanently disabling anoxic brain injury with resulting seizure disorder. Z.R. is significantly permanently brain damaged. He is at present tube-fed, bipap dependent, unable to walk, unable to talk, and is otherwise globally developmentally delayed. Z.R. also suffers from spasticity and autonomic dysfunction. All of these conditions are permanent. All of these conditions resulted from the negligent injuries sustained during his surgery.

## COUNT ONE - MEDICAL NEGLIGENCE

17. Plaintiffs hereby incorporate all previous paragraphs as if restated herein.

18. In this case, the United States of America (Walter Reed National Military Medical Center), through its actual and/or apparent agents, servants and/or employees, including but not limited to Christine Gerbstadt, M.D., Peter B. Willett, M.D., Scott Evans Brietzke, M.D., Thomas G. Townes, M.D., and the anesthesia nursing team, including the nurses and technologists who assisted the anesthesia physicians, breached the standards of care of reasonably competent Health Care Providers by:

(a) failing to ensure Z.R. was adequately hydrated before the procedure;

(b) failing to cancel or postpone the procedure, especially considering that Z.R. had sickle cell disease, asthma and was wheezing and had active reactive airway disease prior to and at the time of the procedure;

(c) failing to conduct a reasonable physical examination on the morning of the procedure;

(d) failing to properly select and administer anesthesia during the procedure;

(e) failing to properly and adequately monitor Z.R.'s vital signs and status intra-operatively;

(f) failing to timely address and respond to Z.R.'s abnormal vital signs intra-operatively;

(g) failing to stabilize Z.R.'s breathing and oxygenation, and/or timely administer CPR and Pediatric Advanced Life Support;

(h) administering magnesium sulfate when Z.R. was already hypotensive, which caused further hypotension, bradycardia, and the inevitable near cardiac arrest;

(i) failing to timely call the Code Blue team;

(j) for other reasons that may be found during the course of discovery of this matter.

19. As a direct and proximate cause of these departures from the standard of care by the Walter Reed Health Care Providers, acting as the actual and/or apparent agents, servants, and/or employees of the United States of America, and without any negligence on the part of Z.R. or his parents TimMeka Harris-Reese and Douglas Reese, Jr., Z.R. sustained a permanent anoxic brain injury intra-operatively. He will never speak, walk, feed himself or otherwise take care of his activities of daily living. He will never work. He will require constant attendant care and a number of other therapies.

## COUNT TWO - INFORMED CONSENT

20. Plaintiffs hereby incorporate all previous paragraphs as if restated herein.

21. The United States of America (Walter Reed National Military Medical Center), through its actual and/or apparent agents, servants and/or employees, including but not limited to Christine Gerbstadt, M.D., Peter B. Willett, M.D., Scott Evans Brietzke, M.D., Thomas G. Townes, M.D., and the anesthesia nursing team, including the nurses and technologists who assisted the anesthesia physicians, performed a BMTT (bilateral myringotomy tympanostomy and tubes) procedure and adenoidectomy.

22. Prior to the procedure, the Walter Reed Health Care Providers, acting as the actual and/or apparent agents, servants and/or employees of the United States of America, were obligated to inform Plaintiffs of the nature of the procedure, the probability of success of the procedure, and most importantly, the material risks and consequences associated with the procedure, particularly when their son Z.R. was an ASA III patient with sickle cell disease, active reactive airway disease, asthma, and active wheezing.

23. The Walter Reed Health Care Providers, acting as the actual and/or apparent agents, servants and/or employees of the United States of America, failed to perform this duty. At no time were Plaintiffs warned that sickle cell children have higher incidents of oxygenation problems during surgical procedures under general anesthesia, combined with the fact that Z.R.'s active reactive airway disease (asthma) and audible wheezing put Z.R. at serious and increased risk of intra-operative airway and breathing complications and oxygenation difficulties – in the face of what was clearly an elective procedure. At no time were Plaintiffs informed that Z.R. was pre-disposed to the exact type of airway problems and near cardiac arrest that ultimately occurred in this case. Thus, Plaintiffs were never permitted to exercise their right to make an intelligent and informed choice in weighing the risks and consequences associated with the procedure.

9

24.  A reasonable person in Plaintiffs' position would have withheld consent to the procedure had these risks and consequences been disclosed.  Plaintiffs themselves would have withheld consent.

25.  As a direct and proximate cause of the breach of the duty of informed consent by the Walter Reed Health Care Providers, acting as the actual and/or apparent agents, servants, and/or employees of the United States of America, Z.R. sustained a permanent anoxic brain injury intra-operatively. He will never speak, walk, feed himself or otherwise take care of his activities of daily living.  He will never work.  He will require constant attendant care and a number of other therapies.

## DAMAGES

26.  Plaintiffs hereby incorporate all previous paragraphs as if restated herein.

27.  As a direct and proximate cause of the aforementioned negligent breaches of the standards of care and the duty of informed consent on the part of the Walter Reed Health Care Providers, acting as the actual and/or apparent agents, servants and/or employees the United States of America, Plaintiffs TimMeka Harris-Reese and Douglas Reese, Jr., both Individually and as Parents and Next Friends of Z.R., sustained and will sustain in the future non-economic damages for pain, suffering, inconvenience, physical impairment, disfigurement, loss of consortium, loss of enjoyment of life and other non-pecuniary losses both before and after the majority of Z.R.

28.  As a direct and proximate cause of the aforementioned negligent breaches of the standards of care and the duty of informed consent on the part of the Walter Reed Health Care Providers, acting as the actual and/or apparent agents, servants and/or employees the United States of America, Plaintiffs TimMeka Harris-Reese and Douglas Reese, Jr., both Individually and as Parents and Next Friends of Z.R., sustained and will sustain both pre-majority and post-majority

economic expenses resulting from the need for: 1) medical care; (2) procedures/hospitalizations/surgeries; (3) evaluations; (4) adjunct therapies such as physical, occupational and related therapies; (5) diagnostic testing; (6) medications; (7) supplies; (8) equipment; (9) orthotics/prosthetics; (10) wheelchairs; (11) aids for independent living; (12) home care; (13) institutional out-of-home facility care; (14) case management; (15) transportation and specially equipped vehicles; (16) transportation; (17) adaptive home furnishing and accessories; (18) counseling; (19) respite care; (20) home modifications; and (21) medical care and procedures for potential complications; (22) as well as other needed care. In addition, Z.R. will suffer a loss of income and income producing ability.

WHEREFORE, the Plaintiffs TimMeka Harris-Reese and Douglas Reese, Jr., both individually and as Parents and Next Friends of Z.R., their son, respectfully demand judgment against Defendant, the United States of America, for compensatory damages in excess of the jurisdictional limit, plus interest, costs and other permissible damages.

Respectfully submitted,

*SHADOAN, MICHAEL & WELLS, LLP*

| /s/ Robert R. Michael | /s/ Gregory K. Wells | /s/ Andrew J. Hall |
|---|---|---|
| Robert R. Michael | Gregory K. Wells | Andrew J. Hall |
| 108 Park Avenue | 108 Park Avenue | 108 Park Avenue |
| Rockville, Maryland 20850 | Rockville, MD 20850 | Rockville, MD 20850 |
| rmichael@smwlawfirm.com | gwells@smwlawfirm.com | ahall@smwlawfirm.com |
| (301) 762-5150 (phone) | (301) 762-5150 (phone) | (301) 762-5150 (phone) |
| (301) 309-8344 (fax) | (301) 309-8344 (fax) | (301) 309-8344 (fax) |
| Fed. Bar: #04259 | Fed. Bar: #03123 | Fed. Bar: #18980 |
| CPF No: 7201010133 | CPF No: 8506010364 | CPF No: 1112130396 |

*Attorneys for Plaintiffs*

*LAW OFFICES OF JOSEPH H. OSTAD, PA*


\_\_\_/s/ Joseph H. Ostad_____
Joseph H. Ostad
401 E. Pratt Street
Suite 2233
Baltimore, MD 21202
jostad@verizon.net
(410) 727-6116 (phone)
(410) 727-6056 (fax)
Fed. Bar:  #08127
CPF No.:  9012190181
*Attorney for Plaintiffs*