## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TIMMEKA HARRIS-REESE, *Individually* | * | |
| *and as Parent and Next Friend of Z.R.*, and | * | |
| DOUGLAS M. REESE, JR., *Individually* | * | |
| *and as Parent and Next Friend of Z.R.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. TDC-19-1971 |
| | * | |
| UNITED STATES OF AMERICA | * | |
| | * | |
| Defendants | * | |
| | * | |

---

## JOINT TRIAL BRIEF

Plaintiffs, TimMeka Harris-Reese and Douglas Reese, Jr., both Individually and as Parent and Next Friend of Z.R., through their attorneys, Robert R. Michael, Gregory K. Wells, Andrew J. Hall, and Shadoan, Michael & Wells, LLP, and Defendant, the United States of America, through the Office of the United States Attorney for the District of Maryland, respectfully file the following Joint Trial Brief:

Plaintiffs

**Count I: Medical Negligence:**

In Maryland, the elements for a medical negligence claim are as follows:

"This Court has characterized "any . . . medical malpractice tort" as a "traditional negligence claim." *Dehn v. Edgecombe*, 384 Md. 606, 618-19, 865 A.2d 603 (2005). Thus, "the general principles which ordinarily govern in negligence cases also apply in medical malpractice claims." *Shilkret v. Annapolis Emergency Hosp. Ass'n*, 276 Md. 187, 190, 349 A.2d 245 (1975). Those general principles are well known. In a tort action based on allegation of negligence, the plaintiff must establish at trial (1) the duty of the defendant based on the applicable standard of care, (2) breach of that duty, (3) causation that relates that breach to the plaintiff's injury, and (4) damages. *Dehn*, 384 Md. at 619.

Generally, the applicable standard of care in a negligence action is whether the defendant acted reasonably as measured against a hypothetical "reasonable" similar actor in similar circumstances.  *See* Prosser & Keeton on Torts (5th ed. 1984), §32 at 173-75; *State for the Use of Chenoweth v. Baltimore Contracting Co.*, 177 Md. 1, 19, 6 A.2d 625 (1939); *M.A. Long Co. v. State Accident Fund*, 156 Md. 639, 650, 144 A. 775 (1929).  The conduct of a member of a profession who has special training and expertise is thus measured against the standard of a hypothetical reasonable person with similar training and expertise.  Such a professional owes a special duty of care to a client or patient that is beyond the duty that would be owed by a general member of the public and that is commensurate with the professional's training and expertise.  *See Jacques v. First National Bank*, 307 Md. 527, 541, 515 A.2d 756 (1986)."

*Armacost v. Davis*, 462 Md. 504, 525-26 (2019).

The "majority rule" applied throughout the United States is that resident physicians are held to the same standard of care as physicians who have completed their residency in the same field of medicine.  *Arpin v. United States*, 521 F.3d 769, 774-75 (7th Cir. 2008); *McBride v. United States*, 462 F.2d 72, 73-74 (9th Cir. 1972); *Eureka-Maryland Assurance Co. v. Gray*, 121 F.2d 104, 107 (D.C. Cir. 1941); *Centman v. Cobb*, 581 N.E.2d 1286, 1290 (Ind. App. 1991); *Green v. State Through Southwest Louisiana Charity Hospital*, 309 So. 2d 706, 709 (La. App. 1975); Joseph H. King, "The Standard of Care for Residents and Other Medical School Graduates in Training," 55 Am. U. L. Rev. 683, 751 (2006).

There is a Fifth Circuit medical negligence FTCA case exactly on point to this case, *Ayers v. United States*, 750 F.2d 449 (5th Cir. 1985), which Plaintiffs are encouraging this Court to follow.  In *Ayers v. United States*, the Government appealed from an adverse judgment in a FTCA case at a V.A. Hospital involving an anesthesia team composed of a first-year resident anesthesiologist (a stipulated employee of the V.A. Hospital) and an attending anesthesiologist who the government claimed was an independent contractor.  *Id*. at 451.  Like this case, the *Ayers* anesthesiologists were both present during the surgery and worked as a team in administering anesthesia to the patient.  *Id*.  *Ayers* involved a spinal anesthetic injection.  *Id*.  Like Walter Reed

2

National Military Medical Center (WRNMMC), it was customary at the teaching hospital in *Ayers* that once the patient comes to the operating room:  (1) the "resident would perform the actual anesthesia management"; (2) the supervising attending physician would step in and do the procedure himself only if the resident had difficulty performing the anesthesia; (3) the role of the supervisor was to "get the resident back on the right track"; (4) the resident is primarily responsible for anesthesia management; and (5) the resident was not relieved of this responsibility to the patient merely because the attending physician was present and stepped in.  *Id*. at 456.  Thus, like this case, in *Ayers* the resident anesthesiologist was the hands-on physician.  *Id*. at 451.

In *Ayers*, the resident anesthesiologist administered the spinal anesthetic, but his attempt to administer the needle into the desired location was unsuccessful.  *Id*.  The attending anesthesiologist then stepped in and obtained a successful spinal tap and administered twelve mg. of tetracaine (a numbing agent) and epinephrine.  *Id*.  The resident anesthesiologist testified that at that time neither he nor the attending anesthesiologist detected the onset of anesthesia.  *Id*. Believing that the anesthetic had not been introduced into the proper location, and after waiting a disputed length of time, the attending anesthesiologist then administered a second dosage of tetracaine and a "drop" of epinephrine.  *Id*.  Immediately after this second injection of anesthetic, the patient began experiencing difficulty breathing, and within minutes he ceased breathing.  *Id*. Normal breathing was restored after about fifteen minutes.  *Id*.  Once breathing was restored, the surgery was performed.  *Id*.  After the surgery, the patient suffered from muscle weakness below the waist, impotence, and incontinence.  *Id*.  He was confined to a wheelchair other than being able to walk short distances with a walker.  *Id*.

In its Findings of Fact, the District Court found:  (1) an anesthesiologist of ordinary prudence and skill would not have included epinephrine in the second injection; (2) for reasons

explained by the patient's expert witnesses, the patient's injury resulted from the "double dose" of epinephrine; (3) an anesthesiologist of ordinary prudence and skill should have anticipated the danger of including epinephrine in the second injection; (4) the management of the anesthesia was negligent in that epinephrine was given in both injections; (5) both physicians were responsible for the anesthesia management, both physicians were assigned to the patient's care, and both were present during the procedure which caused the injury; (6) both physicians therefore had a duty to insure that epinephrine was excluded from the second injection; (7) the attending anesthesiologist breached this duty by including epinephrine; and (8) the resident anesthesiologist breached this duty by failing to call to the attending anesthesiologist's attention the danger of including epinephrine.  *Id*. at 451-52.  In its Findings of Law, the District Court determined that, while the United States was liable for the resident anesthesiologist, it was not liable for the attending anesthesiologist because he was an independent contractor.  *Id*. at 452.  This is precisely what the Government is attempting to argue to this Court.[1]

On appeal, the Government argued that the evidence: (1) failed to establish the standard of care applicable to a licensed first-year resident physician in anesthesiology; and (2) the negligence of the supervising anesthesiologist cannot be imputed to the United States because the supervising doctor was an independent contractor.  *Id*. at 450.  The Fifth Circuit affirmed the judgment against the Government solely on the negligence of the resident anesthesiologist and saw no need to resolve the independent contractor claim as to the attending anesthesiologist.  *Id*.  at 457.  The Fifth Circuit concluded that "[b]ecause the record supports the finding that [the resident physician] was negligent . . . the judgment of the district court is affirmed without reaching the issue of

---

[1] Like this case, the Government is arguing that the attending anesthesiologist, Dr. Gerbstadt, was an independent contractor.  Plaintiffs argue that Dr. Gerbstadt was an employee of WRNMMC.

whether [the attending physician] was an independent contractor or an employee of the hospital." *Id*.

In its reasoning, the Fifth Circuit held that it was reasonable for the District Court to conclude that both physicians were negligent. The Fifth Circuit determined there was sufficient evidence that the resident anesthesiologist was negligent, including:   (1) the resident anesthesiologist *testified* that he knew the procedures for checking for the onset of anesthesia; (2) the resident anesthesiologist was experienced enough to know that there could be a delay in the onset of anesthesia; (3) had the resident anesthesiologist caught the delay in onset of the initial injection of anesthetic, the second injection would not have been given; (4) the resident anesthesiologist *testified* that he personally was "helping to monitor" the signs "of whether or not the anesthesia was taking effect," and that "he would know whether the anesthetic was taking effect"; and further (5) the resident anesthesiologist "failed to call to [the attending anesthesiologist's attention] an error in the ingredient mix." *Id*. at 455-56.

The Fifth Circuit found it pertinent that the resident anesthesiologist was a "licensed physician" with four months of experience in the residency program. *Id*. at 455. Similarly, in this case Dr. Willett was a licensed physician of three years, in the third month of his residency (beginning July 1, 2016), and had previously performed anesthesia-related care for years at medical school (2009-2013), in a post-graduate internship (2013-2014), and as a "medical officer" at a military base overseas (2014-2016).

The Fifth Circuit also held that, like the resident anesthesiologist in *Ayers*, "a doctor's malpractice can be established by his own testimony," noted above. *Id*. at 455. Similarly, in this case the WRNMMC resident anesthesiologist, Dr. Willett, testified at deposition to the following facts, all of which are relevant to his negligence in this case:   (1) he was the hands-on

anesthesiologist for Z.R.'s surgery in all respects; (2) he and Dr. Gerbstadt were working as a "team" to manage Z.R.'s anesthesia, and monitor hemodynamic changes, respiratory and cardiac status; (3) part of his role was to monitor Z.R.'s vital signs during the surgery, specifically including blood pressure, heart rate and carbon dioxide retention (EtCO2); (4) he knew that all of the above vital signs were abnormal throughout Z.R.'s surgery, which led him to be "concerned"; (5) he personally had the ability to adjust the blood pressure interval from 5-minute intervals to faster recording intervals, that "it's not extremely difficult to do it" and in fact "it's not infrequently done"; (6) he knew magnesium sulfate can cause hypotension in a patient, and that Z.R. was already in a dangerous hypotensive state when it was administered; and (7) he had the WRNMMC Pediatric Emergency Drug Sheet at his disposal, which demonstrated that the manner in which the anesthesia team administered magnesium sulfate was in the wrong dose and in the wrong manner.


**Count II: Informed Consent.**

In Maryland, the elements for an informed consent claim are as follows:

(1) The duty to disclose to the patient material information that a physician knows or ought to know would be significant to a reasonable person in the patient's position in deciding whether or not to submit to a particular medical treatment or procedure;

(2) A breach of that duty by failing to make an adequate disclosure; and

(3) The breach was the proximate cause of the patient's injuries.

*Shannon v. Fusco*, 438 Md. 24, 45-56 (2014) (citing *Sard v. Hardy*, 281 Md. 432, 444 (1977))

While a cause of action for informed consent sounds in negligence, it is distinct from a medical negligence claim:

"In a count alleging medical malpractice, a patient asserts that a healthcare provider breached a duty to exercise ordinary medical care and skill based upon the standard of care

6

in the profession, . . . while in a breach of informed consent count, a patient complains that a healthcare provider breached a duty to obtain effective consent to a treatment or procedure by failing to divulge information that would be material to his/her decision about whether to submit to, or to continue with, that treatment or procedure."

*McQuitty v. Spangler*, 410 Md. 1, 18-19 (2009).


Defendant

**Medical Negligence**

The Federal Tort Claims Act ("FTCA") contains a limited waiver of sovereign immunity of the United States in tort matters, making the United States liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The FTCA's limitations are "strictly construed, and all ambiguities are resolved in favor of the sovereign." *See, e.g.*, *Robb v. United States*, 80 F.3d 884, 887 (4th Cir. 1996).

In this medical malpractice action, plaintiffs must show by a preponderance of the evidence (1) the applicable standard of care, (2) that this standard has been violated, and (3) a causal relationship between the violation and the harm complained of. *See, e.g. Fitzgerald v. Manning*, 679 F.2d 341, 346 (4th Cir. 1982). Because the medical treatment at issue in this case occurred in Maryland, Maryland law regarding the substantive elements of medical negligence applies. *Goodie v. United States*, No. Civ. A. RDB-10-3478, 2013 WL 968198, at *4 (D. Md. March 12, 2013) (citing *Miller v. United States*, 308 F. Supp. 2d 604, 607 (D. Md. 2003)). Plaintiffs bear the burden of proof on each element. *Weimer v. Hetrick*, 525 A.2d 643, 651 (Md. 1987) (citing *Shilkret v. Annapolis Emergency Hosp. Ass'n,* 349 A.2d 245, 247 (Md. 1975); *Paige v. Manuzak*, 471 A.2d 758, 766-767 (Md. Ct. Spec. App. 1984)).

Plaintiffs' discussion of the applicable standard of care for a resident physician and lengthy recount of *Ayers v. United States*, 750 F.2d 449 (5th Cir. 1985) is inapplicable in this action. Plaintiffs identify no controlling authority. The authority Plaintiffs do cite is inapposite. This case

does not involve the situation in *Ayers* where the resident was leading the case with the attending in the background.  The evidence will show, in fact, just the opposite occurred.  Dr. Gerbstadt, as the attending, decided what action to take, when, which drug to administer, as well as dosing and method of administration.

Plaintiffs must show that a departure from the standard of care was a cause in fact of ZR's injury.  *See* Civil Maryland Pattern Jury Instruction 19:10; *see also Lane v. Calvert*, 138 A.2d 902, 90 (1958).  Causation in fact concerns the threshold question of "whether defendant's conduct actually produced an injury."  *Pittway Corp. v. Collins*, 973 A.2d 771, 786–88 (Md. 2009).  Causation in fact may be found if it is "more likely than not" that the defendant's conduct was a substantial factor in producing the plaintiff's harm.  *See Reed v. Campagnolo*, 630 A.2d 1145, 1152 (Md. 1993); *Eagle-Picher v. Balbos*, 604 A.2d 445, 459 (Md. 1992).  Maryland courts have adopted the substantial factor test set forth in the Restatement (Second) of Torts.  *Eagle-Picher*, 604 A.2d at 459.  Section 431 of the Restatement (Second) of Torts provides as follows:

> The actor's negligent conduct is a legal cause of harm to another if
>
> (a) his conduct is a substantial factor in bringing about the harm, and
>
> (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm.

Negligent conduct is not a substantial factor if the harm would have been sustained in the absence of the original negligence.  *Collins v. Li*, 933 A.2d 528, 552 (Md. Ct. App. 2007), *aff'd sub nom Pittway Corp. v. Collins*, 973 A.2d 771 (Md. 2009) (citing Section 432 of the Restatement (Second) of Torts).  Section 433 of the Restatement sets forth certain considerations in applying the substantial factor test, namely:

The following considerations are in themselves or in combination with one another important in determining whether the actor's conduct is a substantial factor in bringing about harm to another:

(a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it;

(b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces of which the actor is not responsible;

(c) lapse of time.

*Pittway Corp.*, 973 A.2d at 787.

Plaintiffs must prove damages by a preponderance of the evidence. *See, e.g.*, *Fennell v. Southern Maryland Hosp. Center, Inc.*, 580 A.2d 206, 214 (Md. 1990).

The Court must separately set forth each item of damages in its award. Maryland requires that damages awards be itemized "as part of the verdict" to show the amounts of money intended for each category of economic damages, including the amount intended for "future medical expenses." Cts. & Jud. Proc. § 11-109(b), Maryland Code (1974, 2013 Repl. Vol.); *see also Wyatt v. Johnson*, 653 A.2d 496, 501 (Md. Ct. App. 1995) (holding that "an itemized verdict sheet is required in all cases involving damages resulting from personal injury, regardless of the amount or categories of damages at issue"). Monetary awards must set forth the items awarded for the following categories: (1) Past medical expenses; (2) Future medical expenses; (3) Past loss of earnings; (4) Future loss of earnings; (5) Noneconomic damages; and (6) Other damages. Md. Code Ann., Cts. & Jud. Proc. § 11-109(b).

Maryland has a periodic payment statute. Md. Code Ann., Cts. & Jud. Proc. § 11-109(c)(1), (d). The statute provides that the court, in its discretion, may order that "all or part of the future economic damages portion of the award be paid . . . in periodic or other payments consistent with the needs of the plaintiff," and that any "unpaid balance of the award for future medical expenses

shall revert to the defendant," in the event any funds remain after plaintiff dies.  Md. Code Ann., Cts. & Jud. Proc. § 11-109(c), (d) (mandating reversion of unpaid balance).  A court's utilization of a reversionary trust under the statute is subject to appellate review for abuse of discretion.  *Kent Village Associates Joint Venture v. Smith*, 657 A.2d 330, 339 (Md. Ct. App. 1995).  Maryland's periodic payment statute applies to the United States in modified form.  Although the United States cannot "shoulder continuing obligations" such as an ongoing periodic payment, courts may place damages awarded against the United States in a reversionary trust.  *Cibula v. United States*, 664 F.3d 428, 430, 433 (4th Cir. 2012).

Future medical expenses must be established with reasonable certainty, and must not rest upon speculation or conjecture.  *Pierce v. Johns-Manville Sales Corp.*, 464 A.2d 1020, 1026 (Md. 1983).  When a plaintiff will receive future medical care from a "wholly revenue-funded program" such future benefits are not derived from a collateral source when the United States is also the defendant.  *Burke v. United States*, 605 F. Supp. 981, 993 (D. Md. 1985); *see Lawson v. United States*, 454 F. Supp. 2d 373, 414 (D. Md. 2006) (citing *Mays v. United States*, 806 F.2d 976, 977 (10th Cir. 1986) (reasoning benefits derived from the general revenues of the United States are not a collateral source when the United States is the defendant)).  *See also United States v. Harue-Hayashi*, 282 F.2d 599, 603 (9th Cir. 1960) ("[W]here the injured person is receiving injury-related benefits payable from unfunded general revenues such benefits are to be deducted from any federal tort claim act award."); *Kirkland v. United States*, No. 97 C 895, 1998 WL 895658, at *2 (N.D. Ill. Dec. 9, 1998) (noting that "if the payment comes from general revenues, the funds have not been considered collateral because the United States would be forced to pay for both the hospital care and the judgment from these general revenues, resulting in double payment from the general treasury and overcompensation to the plaintiff.").

Where a plaintiff's future costs could be covered by a government program falling outside the collateral source rule, the Court may reduce recoverable medical expenses in light of the benefits provided by that program. *Burke*, 605 F. Supp. at 994. Such a reduction "prevent[s] double payment by the defendant and . . . ensure[s] recovery only for actual loss to the plaintiff." *Id.* This reduction can be made regardless of the plaintiff's "right to a doctor and hospital of his or her choice." *Id.*

Under the FTCA, courts must "deduct federal income taxes from any projected lost earnings in computing lost future earnings." *Burke v. U.S.*, 605 F. Supp. 981, 991 (D. Md. 1985). *See also Flannery v. United States*, 718 F.2d 108, 111 (4th Cir. 1983) ("[I]t has now been repeatedly held that federal income taxes must be deducted in computing lost future earnings, notwithstanding the fact that such deductions are not permitted under state law.").

Respectfully submitted:

SHADOAN, MICHAEL & WELLS, LLP

By: _____/s/_____
    Robert R. Michael, #04259
    Gregory K. Wells, #03123
    Andrew J. Hall, #18980
    108 Park Avenue
    Rockville, Maryland 20850
    (301) 762-5150
    (301) 309-8344 (fax)
    rmichael@smwlawfirm.com
    gwells@smwlawfirm.com
    ahall@smwlawfirm.com
    *Attorneys for Plaintiffs*

EREK L. BARRON, U.S. ATTORNEY

By: _____/s/_____
Rebecca A. Koch, #802108
Roann Nichols, #07871
Assistant U.S. Attorney
6406 Ivy Lane, Suite 800
Greenbelt, MD 20770
(301) 344-4233
(410) 962-2310 (fax)
rebecca.koch@usdoj.gov
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of March, 2022, a copy of the foregoing Joint Trial

Brief was submitted electronically to:

Robert R. Michael, #04259
Gregory K. Wells, #03123
Andrew J. Hall, #18980
Shadoan, Michael & Wells, LLP
108 Park Avenue
Rockville, Maryland 20850
*Attorneys for Plaintiff*

United States Attorney's Office
Rebecca A. Koch, #802108
Roann Nichols, #07871
6406 Ivy Lane, Suite 800
Greenbelt, MD 20770
*Attorney for Defendant*

William F. Savarino
Joshua D. Schnell
Cordatis LLP
1011 Arlington Blvd., Suite 375
Arlington, VA 22209
*Attorneys for Intervenor*

Joseph H. Ostad
401 E. Pratt Street, Suite 2233
Baltimore, MD 21202
*Attorney for Plaintiff*

_____/s/_____
Robert R. Michael